

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00246-CV

IN THE MATTER OF C.P.

----------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY
TRIAL COURT NO. 38693-LR-D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant C.P. appeals from the trial court's order authorizing the Texas Department of Mental Health and Mental Retardation (MHMR), by and through its agents, to administer psychoactive medication to him, regardless of his refusal. In a single issue, C.P. challenges whether the evidence is legally and factually sufficient to support the trial court's order. Because we hold that the evidence is factually insufficient, we will reverse and remand.

---
[1]*See* Tex. R. App. P. 47.4.

## II. Background

C.P. was committed to the North Texas State Hospital, Vernon Campus after he was found not guilty by reason of insanity for committing the offense of aggravated assault of a family member that occurred on or about December 29, 2011. *See generally* Tex. Code Crim. Proc. Ann. arts. 46C.001–.270 (West 2006 & Supp. 2014). In February 2014, the trial court conducted a hearing regarding the renewal of C.P.'s inpatient treatment and ordered him recommitted to inpatient treatment for one year. *See id.* art. 46C.261(a) (West 2006).

Six months later, C.P.'s treating doctor, Dr. James Boger, filed an application to administer psychoactive medications–forensic because C.P. was diagnosed with schizoaffective affective disorder, depressed type; was having delusional thoughts; and was refusing an increased dose or alternative medications. After hearing testimony from Dr. Boger and from C.P., the trial court found by clear and convincing evidence that C.P. was under a court order to receive inpatient mental health services, that he lacked the capacity to make a decision regarding the administration of the proposed medications and treatment, and that treatment with the proposed medications was in C.P.'s best interest. The trial court thereafter ordered the administration of psychoactive medication to C.P., regardless of C.P.'s refusal of the medication.[2] C.P. then perfected this

---

[2]The order states that it expires "upon the expiration of termination of the court ordered temporary or extended mental health commitment."

2

accelerated appeal. *See* Tex. Health & Safety Code Ann. § 574.070(b) (West 2010).

### III. SUFFICIENCY OF THE EVIDENCE

In his sole issue, C.P. argues that the evidence is legally and factually insufficient to support the trial court's order authorizing MHMR to administer psychoactive medication to C.P., regardless of his refusal.

### A. Burden of Proof and Standards of Review

Clear and convincing evidence must support orders authorizing administration of psychoactive medication regardless of the patient's refusal. Tex. Health & Safety Code Ann. § 574.106(a–1) (West 2010). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010).

In evaluating the evidence for legal sufficiency under the clear and convincing standard, we review all of the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *Id.* The factfinder, not this court, is the sole judge of the credibility and demeanor of the witnesses. *In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009).

In reviewing the evidence for factual sufficiency under the clear and convincing standard, we must determine whether, on the entire record, a reasonable factfinder could reasonably form a firm conviction or belief that its finding was true. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *Id.* We must not supplant the trial court's judgment with our own. *Id.* at 109. The factfinder is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.* An opinion reversing for factual insufficiency must detail the evidence relevant to the issue or point in consideration and clearly state why the finding is factually insufficient (in other words, why the evidence supporting the finding is so weak or is so against the great weight and preponderance of the evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias). *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

## B. Requisite Findings for Order Authorizing Psychoactive Medication

A trial court may issue an order authorizing the administration of psychoactive medications, regardless of the patient's refusal of the medication, if (1) a patient is under a court order to receive inpatient mental health services, (2) the trial court finds by clear and convincing evidence that the patient lacks the

capacity to make a decision regarding the administration of the proposed medications, and (3) the trial court finds by clear and convincing evidence that treatment with the proposed medications is in the best interest of the patient. Tex. Health & Safety Code Ann. § 574.106(a)(1), (a–1)(1) (West 2010).

On appeal, C.P. challenges only the second required finding relating to capacity; we therefore review the record to determine whether legally and factually sufficient evidence supports the trial court's capacity finding.[3]

### C. Testimony at the Hearing

Two witnesses—Dr. Boger and C.P.—gave brief testimony at the hearing on Dr. Boger's application for psychoactive medication.[4]

### 1. Doctor Boger's Testimony

Dr. Boger testified that C.P. had been his patient since "the beginning of his program" and that C.P. had been in treatment for almost two years. Dr. Boger was treating C.P. for schizoaffective disorder, which is characterized by fixed false beliefs, mood components, and depression.

Prior to C.P.'s admission to the state hospital, he had "persecutory delusions," and after admission to the state hospital, he exhibited "limited insight" into his criminal background and his need for medication. C.P. believed that the

---

[3]Although C.P. briefly mentions one best-interest factor within the context of his capacity argument, his brief contains no argument challenging the sufficiency of the evidence to support the trial court's best-interest finding.

[4]The reporter's record in this appeal comprises eighteen pages, and only fourteen of those pages include testimony from the witnesses.

5

Black Masons[5] were present at the hospital, were conspiring with the hospital, and were controlling the hospital.

According to Dr. Boger, C.P. poses a danger to others because if a person becomes woven into C.P.'s delusions about the Black Masons, that person could become C.P.'s target. Dr. Boger opined that C.P.'s history of dangerous behavior makes him more prone to dangerous behavior in the future. Nonetheless, Dr. Boger testified that C.P. had not acted out toward anyone in the hospital.

Dr. Boger said that he wanted to change C.P.'s medication because C.P. was still having delusional thoughts and because "there's also the deterioration aspect or the fact that he's not moving forward. So we need to get him on the proper meds so he can move forward in his treatment." Dr. Boger testified that the only alternative to court-ordered medication that could produce the same result would be shock therapy and that he had tried everything that he could think of that would be less intrusive, but C.P. had reached a plateau.

Dr. Boger said that he had explained the benefits and the side effects of the proposed medications to C.P; the side effects of the proposed medications include a movement disorder or stiffness and metabolic syndrome. Dr. Boger believed that the benefits outweighed the possible side effects. Dr. Boger said that C.P. understood the possible risks and benefits of the proposed medications

---

[5]The record does not contain information about this group.

but explained, "When we wanna change his medications, he's refusing to change them."

Dr. Boger testified that C.P. was currently taking a moderate dose of Risperdal and that C.P. wanted the dosage lowered. Dr. Boger said that C.P. had mentioned having a headache when he was placed on Risperdal. Dr. Boger said that headaches are not a common side effect of Risperdal, that C.P. was observed over a long period, and that none of the nursing staff witnessed C.P. with a headache. Dr. Boger opined that C.P.'s delusional beliefs could extend to beliefs that his medications were causing side effects.

Dr. Boger concluded that C.P. lacked the capacity to make a decision regarding the administration of the proposed medications because C.P. did not have "very good insight into his crime and the circumstances with regard[] to his hospitalization" and because he continued to experience delusions about the Black Masons while on his current medication.

Finally, Dr. Boger testified that he believed that the proposed medications were in C.P.'s best interest and that treatment with the proposed medications would improve C.P.'s quality of life. Dr. Boger said that if he could get C.P. on the right medications, C.P. would "move on."

### 2. C.P.'s Testimony

C.P. told his treatment team that he felt his life was in danger from the Black Masons and said he still feels that way, "but that don't mean I'm crazy or

psychotic . . . [o]r would go off the deep end." C.P. explained that he felt like he was in danger because he had been told by a Black Mason that he needed to "watch out."

C.P. did not think his mental health was getting worse. C.P. said that he was not antisocial; that he played games; that he interacted with the staff "all the time, everyday"; that he had not encountered any problems with other patients or with the staff; and that he was socializing very well.

C.P. felt that his current medications were working. He complained that he suffered from headaches when he took Abilify, not Risperdal. C.P. said that Dr. Boger did not have a conversation with him about increasing the dosage before increasing it and that he did not like his medications being changed by Dr. Boger without talking to him first. C.P. testified that he took the higher dosage of Abilify two or three times before he asked Dr. Boger to lower the dosage. C.P. said that Dr. Boger lowered the dosage and that he felt okay at the dosage he was currently taking. C.P. felt that increasing the dosage would cause him to experience headaches.

When asked whether he felt capable of making decisions regarding what dosage of medications he should take or whether he thought he could make those decisions, C.P. admitted that he was not an expert and does not know what kind of medications are available. C.P. said that he was not informed enough to say whether he wanted to take a medication; he had not had any

8

discussions with Dr. Boger about his medications and wanted the opportunity to visit with the doctor. C.P. described Dr. Boger as a "drive-by doctor," who just came and said hello and then left.

### D. Analysis

In his sole issue, C.P. argues that the evidence is legally and factually insufficient to support a finding that he lacks the capacity to make a decision regarding the administration of the proposed medications.

"Capacity" means a patient's ability to understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment and to make a decision whether to undergo the proposed treatment. *Id.* § 574.101(1) (West 2010).

In evaluating the legal sufficiency of the evidence of the trial court's capacity finding, we will disregard all contrary evidence, unless a reasonable factfinder could not have done so. *See K.E.W.*, 315 S.W.3d at 20. As set forth above, Dr. Boger testified that C.P. lacked capacity to make a decision regarding the administration of psychoactive medications because C.P. exhibited limited insight into his criminal background and his need for medication. Dr. Boger explained that C.P. was being treated for schizoaffective disorder and that one of the characteristics of the disorder was fixed false beliefs. Dr. Boger said that C.P. had previously had, and continued to have, delusions about the Black Masons and could have delusions about the side effects of his medications. Dr.

9

Boger testified that C.P. had refused an increased in dosage, claiming that Risperdal caused him headaches.

Viewing the evidence in the light most favorable to the trial court's capacity finding, while also giving deference to the trial court's determination of the witnesses' credibility and demeanor, we hold that the trial court could have formed a firm belief or conviction that C.P. lacked the capacity to make a decision regarding administration of psychoactive medications to treat his mental illness. *See id.* § 574.106(a-1)(1); *K.E.W.*, 315 S.W.3d at 20; *J.O.A.*, 283 S.W.3d at 346; *In re W.W.*, No. 12-13-00045-CV, 2013 WL 3156312, at *6 (Tex. App.—Tyler June 19, 2013, no pet.) (holding evidence legally sufficient to support trial court's capacity finding). We overrule the portion of C.P.'s sole issue challenging the legal sufficiency of the evidence to support the capacity finding in the trial court's order authorizing the administration of psychoactive medications–forensic to C.P.

Having determined that the evidence is legally sufficient to support the trial court's capacity finding, we address factual sufficiency and consider all the evidence, both that in support of and contrary to the trial court's capacity finding. *See H.R.M.*, 209 S.W.3d at 108. Although Dr. Boger provided testimony that C.P. lacked capacity because he had poor insight into the crime he had committed and the circumstances of his hospitalization, had continued to have delusions about the Black Masons, and could have delusions about the side

10

effects of his medications, Dr. Boger did not articulate how these poor insights or delusions related to or impacted an ability by C.P. to understand the nature and consequences of his proposed treatment—including the benefits, risks, and alternatives to the proposed treatment—or his ability to make a decision whether to undergo the proposed treatment. *See* Tex. Health & Safety Code Ann. § 574.101(1) (defining capacity). Instead, Dr. Boger testified that C.P. understood the possible risks and benefits of the proposed modifications but had refused changes to medications. Likewise, in the application for order to administer psychoactive medication–forensic, Dr. Boger alleged that C.P. lacked capacity only because he was "refusing increased dose or alternative medi[c]ations." But the section of the application in which the physician is to check whether the patient verbally or otherwise indicated his refusal to take the medication voluntarily is not completed. *See id.* § 574.104(a)(4) (West 2010).[6]

C.P. testified that he was taking his prescribed medications. C.P. explained that he had tried the higher dosage of one drug prescribed by Dr. Boger and had experienced headaches. C.P.'s testimony stated that his main reason for noncompliance with a higher dosage was that he wanted to discuss medication changes with Dr. Boger before they were made. He testified that Dr. Boger did not talk with him prior to medication changes. Dr. Boger offered contrary testimony—that he did speak with C.P. prior to medication changes—

---

[6]While facts alleged in the application are not evidence that the statutory standard has been met, *see In re E.T.*, 137 S.W.3d 698, 700 (Tex. App.—San Antonio 2004, no pet.), here such facts were not even alleged in the application.

11

and also testified that C.P. understood the possible risks and benefits of the proposed medications.

In summary, the evidence that C.P. is taking medications, is not refusing all medications, is expressing a desire to be involved in the decision-making process regarding his medications, and is able—according to Dr. Boger's testimony—to understand the risks and benefits of proposed medications constitutes evidence so significant that the trial court could not reasonably have formed a firm belief or conviction that C.P. lacked the capacity to make a decision regarding administration of psychoactive medications to treat his mental illness. *See* Tex. Health & Safety Code Ann. § 574.106(a-1)(1); *H.R.M.*, 209 S.W.3d at 108; *W.W.*, 2013 WL 3156312, at *6 (holding evidence factually insufficient to support trial court's capacity finding). We therefore hold that the evidence is factually insufficient to support the trial court's capacity finding. We sustain the portion of C.P.'s sole issue challenging the sufficiency of the evidence to support the capacity finding in the trial court's order authorizing the administration of psychoactive medications–forensic to C.P.

## IV. CONCLUSION

Having concluded that the evidence is legally sufficient but factually insufficient to support the capacity finding in the trial court's order authorizing the administration of psychoactive medications–forensic to C.P., we reverse the trial

12

court's order and remand the case for further proceedings.[7]  *See* Tex. R. App. P.

43.2(d); *W.W.*, 2013 WL 3156312, at *6.

PER CURIAM

PANEL:  WALKER, J.; LIVINGSTON, C.J.; and MCCOY, J.

DELIVERED:  October 23, 2014

---

[7]Because the trial court may issue an order authorizing the administration of psychoactive medication by making either of the findings required by section 574.106(a-1)(1), which includes a lack of capacity finding, or by section 574.106(a-1)(2), which includes a danger-to-self-or-others finding, and because the trial court did not make a danger-to-self-or-others finding, we need not address C.P.'s arguments concerning section 574.106(a-1)(2).  *See* Tex. Health & Safety Code Ann. § 574.106(a-1); *State ex rel. A.S.,* No. 12-13-00300-CV, 2013 WL 6798153, at *2 (Tex. App.—Tyler Dec. 20, 2013, no pet.) (mem. op.) (holding trial court was not required to make a danger-to-self-or-others finding because it made lack of capacity finding); *In re A.S.K*, No. 02-13-00129-CV, 2013 WL 3771348, at *3 (Tex. App.—Fort Worth July 18, 2013, no pet.) (explaining that sufficient evidence of either lack of capacity or of dangerousness to self or others would support order); *see also* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary to final disposition of appeal).